PRESTON AND PEGGY HUNTER v. GEORGE F. SPAULDING

No. 8810SC1404

(Filed 20 February 1990)

1. **Rules of Civil Procedure §§ 33, 37 (NCI3d)— interrogatories answered—knowledge of answers disavowed at trial—answer struck—default judgment proper sanction**

   N.C.G.S. § 1A-1, Rule 33 does not permit a party to swear to the truth of answers given on interrogatories and then, at trial, to disavow knowledge about those answers; where defendant in this case did that, the trial court properly struck his answer and entered default judgment against him.

   **Am Jur 2d, Depositions and Discovery §§ 391, 392.**

2. **Rules of Civil Procedure §§ 33, 37 (NCI3d)— interrogatories not answered by person served—imposition of sanctions proper**

   By attesting to answers which were not his, defendant did not meet the requirements of N.C.G.S. § 1A-1, Rule 33 because the party served in this case did not answer the interrogatories and the responses returned to plaintiffs were not verified by the person who gave them; therefore, the imposition of sanctions against defendant was proper under N.C.G.S. § 1A-1, Rule 37(d).

   **Am Jur 2d, Depositions and Discovery §§ 391, 392.**

3. **Fraud § 9 (NCI3d)— sale of house at inflated price—sufficiency of complaint to allege fraud**

   Plaintiffs' complaint averred the necessary elements of fraud with sufficient particularity to allow default judgment to be entered for plaintiffs when the judge struck defendant's answer where the complaint alleged that defendant realtor concealed his purchase of a house and immediately resold it to plaintiffs for $10,000 more than he had just paid for it.

   **Am Jur 2d, Brokers §§ 91-94.**

4. **Rules of Civil Procedure § 55 (NCI3d)— default—punitive damages—right to present evidence**

   A party who is defaulted for failure to answer interrogatories must be afforded an opportunity to be heard on the question of punitive damages.

   **Am Jur 2d, Depositions and Discovery §§ 391, 392.**

## HUNTER v. SPAULDING

[97 N.C. App. 372 (1990)]

APPEAL by defendant from judgment entered 30 June 1988 in WAKE County Superior Court by *Judge B. Craig Ellis.* Heard in the Court of Appeals 24 August 1989.

*Hensley, Huggard, Seigle, Obiol and Bousman, by John P. Huggard, for plaintiff-appellees.*

*Hunton and Williams, by Odes L. Stroupe, Jr., and A. Todd Brown, and Thigpen, Blue and Stephens, by Ralph L. Stephens, for defendant-appellant.*

BECTON, Judge.

Plaintiffs instituted this action alleging unfair and deceptive trade practices and actual and constructive fraud on the part of defendant. At trial, defendant was called as an adverse witness. Plaintiffs moved to strike his answer when he admitted he had not personally answered plaintiff's written interrogatories. The trial judge struck the answer and entered a default judgment against defendant on the actual fraud claim and awarded compensatory damages of $10,000.00. The question of punitive damages was then submitted to the jury, which returned a verdict for plaintiffs in the amount of $1,100,000.00. Defendant appealed. We affirm in part and reverse and remand in part.

I

The plaintiffs, Preston and Peggy Hunter, are citizens of Wake County. Defendant, George Spaulding, and his partner, Grady Perkins, own Spaulding and Perkins, Ltd., a North Carolina corporation. The two also own Spaulding and Perkins Realty Company, a North Carolina partnership. The Hunters joined several other Wake County residents in a lawsuit against Spaulding and Perkins individually and against their corporation and partnership. The Hunters allege that Spaulding and Perkins used the real estate company to defraud them in the purchase of a house. According to the Hunters, Spaulding and Perkins sold them a house ostensibly owned by a third party. In fact, the complaint charges, Spaulding and Perkins previously had purchased this home through their corporation for $47,000.00. They then sold the house to the Hunters for $57,000.00, never telling the Hunters about the prior transaction.

At trial, the Hunters called Mr. Spaulding as an adverse witness, and their lawyer, Mr. Huggard, attempted to examine him about certain answers he had furnished to written interrogatories. The following ensued:

[Mr. Spaulding]. We had basically two divisions. I operated the convenience food stores, Mr. Huggard. I had nothing to do with any real estate. I don't know anything about it so ask me anything you want to.

Q. But you are one of the defendants in this suit—

A. Yes.

Q. —and you have been sued?

A. Yes, sir.

Q. And the case is a case for real estate fraud?

A. If you say so, Mr. Huggard. I really don't know.

Q. Have you had the opportunity to talk with any of your attorneys about this case?

A. No, sir, because I wasn't involved in the beginning so there was no need for me getting involved in it now. I didn't know anything about it.

Q. Have you received any discovery from our office, interrogatories or requests for admission or anything like that directed expressly to you?

A. Yes, and we gave them to—I gave mine to our attorney.

Q. Okay.

A. Because I didn't know anything about it and he handled it.

Q. Those interrogatories are directed to you personally because they are required to be answered under oath and returned. Do you remember answering them under oath and returning them?

A. No, sir. Like I said, Mr. Huggard, I gave it to my attorney . . . and he handled it. I didn't know anything about it.

Q. You did not give him any answers then?

A. No, sir.

The next day, Mr. Spaulding returned to the stand and "adopted" the written answers saying, "I can't deny that I didn't sign [them] or anything. It was done in good faith and since I had no knowl-

edge of the transaction . . . what answers are on here through Perkins and my attorney, that's the answers I have to live with."

The Hunters moved that Mr. Spaulding's answer be stricken because, among other grounds, his testimony showed he had not personally answered the interrogatories. After initially denying the motion, the judge agreed to strike the answer and to enter a default judgment against Mr. Spaulding for actual fraud.[1] The judge ruled that the Hunters were entitled to compensatory damages of $10,000.00. After the Hunters took a voluntary dismissal against the remaining defendants (Perkins, the corporation, and the partnership), the judge submitted the issue of punitive damages to the jury. The jury returned a verdict holding Mr. Spaulding individually liable for punitive damages of $1,100,000.00.

## II

[1]   Mr. Spaulding first argues that the judge erred as a matter of law by striking his answer and entering the default judgment. N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 33(a) in part states that "any party may serve upon any other party interrogatories to be answered by the party served . . . ." Answers to interrogatories must be signed "by the person making them." When that party "is a public or private corporation or a partnership or association . . . any officer or agent . . . shall furnish such information as is available to the party." Our Rule has been read as requiring that "[w]ritten interrogatories . . . be answered by the party served and [that] those answers . . . contain such information as is reasonably available to the party and not simply his personal knowledge." W. Shuford, *N.C. Civil Practice and Procedure*, Sec. 33-10 (3d ed. 1988) (citing *Hickman v. Taylor*, 329 U.S. 495, 91 L.Ed. 451 (1947) ). Using Shuford and federal cases, Mr. Spaulding contends that Rule 33 required that he furnish information available to him through Mr. Perkins and his lawyers, in spite of his lack of any personal knowledge about the real estate transaction with the Hunters. We disagree.

Rule 33 does not permit a party to swear to the truth of answers given on interrogatories and then, at trial, to disavow

---

1. Lengthy arguments are made by the parties as to whether Mr. Spaulding should have been defaulted on other grounds argued by the Hunters when they made their motion to strike the answer. We do not address those grounds because our review of the trial transcript convinces us that the judge defaulted Mr. Spaulding on the basis of Spaulding's admission that the answers given to the interrogatories were not his.

knowledge about those answers. Our courts have often noted that the emphasis of our discovery rules "is not on gamesmanship, but on expeditious handling of factual information before trial so that the critical issues may be presented at trial unencumbered by unnecessary or specious issues and so that evidence at trial may flow smoothly and objections and other interruptions be minimized." *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976). This purpose cannot be served if a party is allowed to return written answers to which he has sworn — and on which the opposing party is entitled to rely — and then effectively disaffirm those answers at trial. Any requirement that a person supply answers that are "reasonably available" does not mean that a person may distend Rule 33 to fashion a shield of so-called "deniability." Furthermore, later protestations by the party that he adopts the answers given for him does not excuse nor obviate his failure to comply with Rule 33.

The interrogatories in this case are directed to Mr. Spaulding in his individual capacity as well as in his capacity as an agent of his companies. Trial was not the time for him to aver his lack of personal knowledge about the matters inquired of him by the interrogatories. We hold that the judge correctly ruled that Mr. Spaulding violated Rule 33.

[2] Mr. Spaulding next argues that, even if his answers were improper under Rule 33, he could not be sanctioned under N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 37(d) (1983) in that sanctions may be applied under that rule only for a complete failure to answer interrogatories. He cites language by our Supreme Court in *Willis* wherein the Court said that "if a party files answers . . . no sanctions under Rule 37(d) may be obtained and the proper procedure for the party seeking discovery is to obtain an order compelling discovery under Rule 37(a)." 291 N.C. at 35, 229 S.E.2d at 201. The Court, however, prefaced that passage by saying that "Rule 37(d) does not . . . come into operation *if the responding party meets the requirements of Rule 33* . . . ." *Id.* (emphasis added). By attesting to answers that were not his, Spaulding did not "meet the requirements of Rule 33"; the party served in this case did not answer the interrogatories and the responses returned to plaintiffs were not verified by the person or persons who gave them. We hold, therefore, that the imposition of sanctions against Mr. Spaulding was proper under Rule 37(d).

## HUNTER v. SPAULDING

[97 N.C. App. 372 (1990)]

Pursuant to N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 37(b)(2)c (Cum. Supp. 1989), a party who fails to serve answers may have his pleadings stricken or have a default judgment entered against him. When a judge imposes sanctions, even in the severe form of defaulting the party, our review addresses whether the judge's actions constituted an abuse of discretion, *First Citizens Bank and Trust Co. v. Powell*, 58 N.C. App. 229, 230, 292 S.E.2d 731, 731-32 (1982), *aff'd*, 307 N.C. 467, 298 S.E.2d 386 (1983), remembering that the general purpose of our rules is to encourage trial on the case's merits. *American Imports, Inc. v. G.E. Employees W. Region Fed. Credit Union*, 37 N.C. App. 121, 124, 245 S.E.2d 798, 800 (1978). In the face of Mr. Spaulding's admission on the stand that he had not answered the interrogatories he verified—an admission that undermined trial on the case's merits—we cannot say that the judge abused his discretion by sanctioning Mr. Spaulding as he did.

[3] Mr. Spaulding next contends that, even if his answer could be stricken, defaulting him on the Hunters' fraud claim was improper in that the Hunters' complaint for fraud was deficient. As a preliminary matter, we hold that Mr. Spaulding's exception to the judgment, entered in open court, permits him to challenge on appeal whether a default judgment could be based upon the Hunters' complaint, N.C. R. App. P. 10(b)(1) (1989), and we reject the Hunters' contention that this issue has not been preserved for appeal.

A default judgment admits only the allegations contained within the complaint, and a defendant may still show that the complaint is insufficient to warrant plaintiff's recovery. *Lowe's of Raleigh, Inc. v. Worlds*, 4 N.C. App. 293, 295, 166 S.E.2d 517, 518 (1969); *accord, Weft, Inc. v. G. C. Investment Associates*, 630 F.Supp. 1138, 1141 (E.D.N.C. 1986), *aff'd*, 822 F.2d 56 (4th Cir. 1987) (default not treated as absolute confession by defendant of plaintiff's right to recover and court must consider whether plaintiff's allegations are sufficient to state claim for relief). The well-recognized elements of fraud are 1) a false representation or concealment of a material fact, 2) reasonably calculated to deceive, 3) made with intent to deceive, 4) which does in fact deceive, and which 5) results in damage to the injured party. *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981). A complaint charging fraud must allege these elements with particularity. N.C. Gen. Stat. Sec. 1A-1, R.

Civ. P. 9(b) (1983). Among other things, the Hunters' complaint makes the following claims:

> 4. In May, 1981, the plaintiffs . . . were in the market to purchase a home. The Hunters were shown a house which was currently being sold by its owners through the defendant Spaulding and Perkins Realty Company.
>
> 5. Upon seeing this house, the Hunters informed both their real estate broker and Spaulding and Perkins that they were interested in purchasing the home. A real estate contract was signed showing the owners of the house as sellers and the Hunters as the buyers.
>
> 6. . . . [On] June 4, 1981, Spaulding and Perkins, Ltd., without notifying the plaintiff-buyers . . . [of] their intentions, purchased for their own interest the house the Hunters wanted to buy. Spaulding and Perkins, Ltd., paid $47,000 for the house. They immediately set up a closing date on which date the Hunters would purchase the property. The closing date was set for July 22, 1981. The owners (sellers) who signed the contract to sell their house were not present.
>
> 7. On July 22, 1981, the Hunters attended a real estate closing at the office of Spaulding and Perkins Realty Company and received some closing documents on the house they purchased . . . . At this closing, the Hunters paid $57,000 for the house.
>
> 8. At no time did Spaulding and Perkins Realty Company or Spaulding and Perkins, Ltd. tell the Hunters that they (Spaulding and Perkins) had purchased the house from the previous owners a short while before the closing for a price of $47,000
>
> . . . .
>
> 10. The acts of the defendant corporation and partner[s]hip and their agents, partners, and officers caused actual financial injury to the plaintiffs in the amount of $10,000. The false statements and concealments mentioned above were done to induce plaintiffs to buy a house in such a manner as to allow Spaulding and Perkins to make a secret profit of $10,000 and keep such improperly obtained profits.

We hold that the complaint avers the necessary elements of fraud with sufficient particularity to have allowed default judg-

HUNTER v. SPAULDING

[97 N.C. App. 372 (1990)]

ment to be entered for the Hunters when the judge struck Mr. Spaulding's answer.[2] The Hunters' claim, although not, perhaps, a model pleading, sets forth the time, place, and content of the concealment, and charges that neither Spaulding nor Perkins informed plaintiffs of the prior purchase of the house. We reject, in the same vein, Mr. Spaulding's contention that the judge could not award compensatory damages to the Hunters without a trial of that issue. When the judge struck Spaulding's answer and entered the default judgment, that constituted an admission by Mr. Spaulding of the $10,000.00 "actual financial injury" alleged by the Hunters in their complaint. *See Lowe's*, 4 N.C. App. at 295, 166 S.E.2d at 518.

Mr. Spaulding's assignments of error directed to the entry of default judgment for his failure to answer interrogatories and the awarding of $10,000.00 actual damages to the Hunters are overruled.

III

[4]   Mr. Spaulding argues that the punitive damages awarded by the jury cannot stand because, among other grounds, he was not permitted to present any evidence on the issue. We agree that the judge erred by submitting the question to the jury without affording Mr. Spaulding the opportunity to put on evidence and, accordingly, we vacate that portion of the judgment and remand for a new trial.[3]

N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 55(b)(2) in part provides that

[i]f, in order to enable the judge to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to take an investigation of any other matter, the judge may conduct such hearings or order such references as he deems necessary and proper and *shall* ac-

---

2. In light of our holding, we do not decide whether a plaintiff whose complaint is deficient may have a default judgment entered in his or her favor if evidence offered subsequently at trial furnishes the requisite particularity. *See Nishimatsu Constr. Co. v. Huston Nat'l Bank*, 515 F.2d 1200, 1206 n.5 (5th Cir. 1975).

3. The Hunters argue that Mr. Spaulding's failure to object to the jury instruction on punitive damages precludes his right to contest damages on appeal. Again, we hold that Spaulding's exception to the default judgment preserves for our review the judge's failure to submit the punitive damages question without hearing additional evidence.

cord a right of trial by jury to the parties when and as required by the Constitution or by any statute of North Carolina.

(Emphasis added.) As other jurisdictions have recognized, the rule embodies important concepts of due process, and due process requires adherence to the procedural safeguards of notice and hearing even when default is used as a Rule 37 sanction. *See Poleo v. Grandview Equities, Ltd.*, 143 Ariz. 130, 133-34, 692 P.2d 309, 312-13 (Ariz. App. 1984), and cases cited. We think that due process concerns equally demand that a party who is defaulted for failure to answer interrogatories be afforded an opportunity to be heard on the question of punitive damages.

'Compensatory damages are demonstrable and capable of being alleged in a sum certain by a plaintiff. A defendant, moreover, can admit that the plaintiff has been damaged in that amount. Punitive damages, in contrast, are not recoverable as a matter of right but are always within the discretion of the trier of fact. *See Harris v. Queen City Coach Co.*, 220 N.C. 67, 69, 16 S.E.2d 464, 465 (1941). The judge in this case properly entered judgment for the Hunters on their claim of compensatory damages, and he rightly left the question of their entitlement to punitive damages for the jury. By submitting the issue without affording Mr. Spaulding an opportunity to contest those damages, however, the judge erred. It is, for example, questionable whether the damages the jury awarded relate to the real estate claim or, in part or in whole, to Mr. Spaulding's failure to comply with discovery. Permissible sanctions for the latter do not include the party's answering in punitive damages.

We hold, therefore, that it was error for the judge to submit the punitive damages issue to the jury without first allowing Mr. Spaulding an opportunity to present evidence addressed to that issue. Conducting the trial in this way deprived Mr. Spaulding of his rights to be heard and a trial of the punitive-damages claim and contravened both his due process rights and the requirement of Rule 55(b)(2). For these reasons, we remand for a new trial on the question of punitive damages.

IV

Mr. Spaulding argues that the judge erred by allowing certain documents into evidence. The Hunters meet these challenges by charging that Mr. Spaulding failed to object to the evidence when

offered at trial and thus has waived his right to object on appeal. As we have awarded a new trial so that Mr. Spaulding may present evidence, we could only speculate, at this point, as to how those documents might or might not be relevant should they be introduced at trial. Therefore, we do not address these assignments of error.

V

The judgment of the trial judge in favor of the Hunters on their claim of actual fraud is affirmed; the award of punitive damages is vacated and that issue is remanded for a new trial. The Hunters' motion to dismiss defendant's assignments of error is denied.

Affirmed in part, vacated and remanded in part.

Judges ARNOLD and COZORT concur.