SIVITA USA, INC., Plaintiff,
v.
JODY L. STUTTS and DONALD W. STUTTS, and NORTH AND SOUTH TRUCK TIRE SALES, INC., Defendants.
No. COA07-1509
Court of Appeals of North Carolina
Filed July 15, 2008
This case not for publication
Benson & Brown, PLLC, by Drew Brown and Drew Sprague, for Plaintiff-Appellee.
Lane & Lane, PLLC, by Freddie Lane, Jr. and Meleisa C. Rush-Lane, for Defendants-Appellants.
McGEE, Judge.
Sivita USA, Inc. (Plaintiff) filed a complaint on 21 December 2005 against Jody L. Stutts (Defendant Stutts) and North and South Truck Tire Sales, Inc. (Defendant North and South) (collectively Defendants). Plaintiff also named Donald W. Stutts as a defendant. However, it appears that Donald W. Stutts was mistakenly named as a defendant and that Plaintiff took a dismissal of its action against him.[1] Donald W. Stutts is therefore not a party to this appeal.
In its complaint, Plaintiff alleged that "on or about April 29, 2005, Dr. [Bella] Moussa Keita was the President and owner of [Plaintiff], and at all times relevant herein was acting on behalf of said corporation." Plaintiff also alleged that "on or about April 29, 2005, [Plaintiff] entered into a contract with [Defendant] North and South . . . and/or [Defendant Stutts] . . . for the purchase of tires and shipping containers." Plaintiffs further alleged that Defendants "failed and refused to abide by said contract despite the fact they [had] been paid in full for their performance therein." Plaintiff alleged claims for breach of contract, claim and delivery, and unfair and deceptive trade practices.
Defendants filed a motion on 30 January 2006 for an extension of time to file their answer or other defensive pleadings. The trial court entered an order allowing Defendants an additional thirty days, up to and including 16 March 2006, in which to file an answer or other defensive pleading and respond to discovery. Defendant North and South filed an answer and counterclaim on 12 September 2006. Defendant Stutts did not file an answer. Defendants' counsel filed a motion to withdraw on 5 February 2007, and the trial court allowed the motion on 19 March 2007. Plaintiff filed a motion for entry of default on 23 April 2007. In its motion, Plaintiff alleged that the trial court called the case for trial on 23 April 2007 and Defendants did not appear before the trial court for trial. The trial court entered an order, stating as follows:
It appears to the court upon a review of the motion and the court file for this action that [D]efendants . . . have been served with [P]laintiff's complaint; that [D]efendants . . . have been timely notified of the trial calendar date April 23, 2007; and that [D]efendants . . . have failed to appear for the trial scheduled in this matter. Accordingly, [D]efendants . . . are now subject to entry of default as provided by the North Carolina Rules of Civil Procedure.
Plaintiff filed a motion for default judgment and for attorney's fees on 18 May 2007. Plaintiff filed a "declaration of Dr. Bella Moussa Keita in support of motion for default judgment" on 4 June 2007. Plaintiff also filed an "affidavit in support of motion for attorney fees" on 4 June 2007.
Defendants filed a motion to set aside entry of default on 4 June 2007. At the hearing on Defendants' motion, Plaintiff's counsel stated as follows: "We request that both defendants joint[ly] and severally be liable, but the contract was just between [Defendant] North and South and [Plaintiff], so to the extent that [Defendant] Stutts is now liable, on that front we have a flexible proposed order that could address the Court's needs in that." The trial court entered an order and final judgment on 20 June 2007. In its order and final judgment, the trial court denied Defendants' motion to set aside entry of default and granted Plaintiff's motion for default judgment and for attorney's fees. The trial court ordered that Defendants were "jointly and severally liable in the amount of $195,000.00, plus interest bearing at eight percent per annum from June 24, 2005, until the judgment is satisfied." The trial court further ordered that Defendants were liable for attorney's fees in the amount of $11,813.00. Defendants appeal.

I.
Defendants argue the trial court abused its discretion by denying their motion to set aside entry of default. Pursuant to N.C. Gen. Stat. § 1A-1, Rule 55(a) (2007),
[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or is otherwise subject to default judgment as provided by these rules or by statute and that fact is made to appear by affidavit, motion of attorney for the plaintiff, or otherwise, the clerk shall enter his default.
N.C. Gen. Stat. § 1A-1, Rule 55(d) (2007) provides as follows: "For good cause shown the court may set aside an entry of default, and, if a judgment by default has been entered, the judge may set it aside in accordance with Rule 60(b)." "A trial court's decision to grant or deny a motion to set aside an entry of default and default judgment is discretionary. Absent an abuse of that discretion, this Court will not reverse the trial court's ruling." Basnight Constr. Co. v. Peters & White Constr. Co., 169 N.C. App. 619, 621, 610 S.E.2d 469, 470 (2005) (internal citation omitted). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision."Hursey v. Homes by Design, Inc., 121 N.C. App. 175, 177, 464 S.E.2d 504, 505 (1995).
Defendants first argue the trial court exceeded its authority because the trial court, rather than the clerk of court, entered the default. However, it is well settled that while "the Rule provides that entry is to be made by the clerk, the judge has concurrent jurisdiction and can order entry of default." Ruiz v. Mecklenburg Utilities, Inc., ___ N.C. App. ___, ___, 657 S.E.2d 432, 434 (2008) (citing Hasty v. Carpenter, 51 N.C. App. 333, 336-37, 276 S.E.2d 513, 516-17 (1981); Highfill v. Williamson, 19 N.C. App. 523, 532, 199 S.E.2d 469, 474 (1973)). Therefore, the trial court did not abuse its discretion in this regard.
Defendants next argue that the trial court lacked authority to enter default against Defendant North and South in that the corporate Defendant filed a verified answer. Our Court has held that "'[d]efault may not be entered after an answer has been filed, even if the answer is tardily filed.'" Fieldcrest Cannon Employees Credit Union v. Mabes, 116 N.C. App. 351, 353, 447 S.E.2d 510, 512 (1994) (quoting Joe Newton, Inc. v. Tull, 75 N.C. App. 325, 328, 330 S.E.2d 664, 666 (1985) (citing Peebles v. Moore, 302 N.C. 351, 275 S.E.2d 833 (1981))). In Peebles, the trial court entered a default against the defendant after the defendant had filed his answer. Peebles, 302 N.C. at 356, 275 S.E.2d at 836. Our Supreme Court stated as follows:
The portion of G.S. 1A-1, Rule 55, applicable to the facts of the case before us, requires a clerk to make an entry of default "when a party . . . has failed to plead. . . ." When a party has answered, it cannot be said that he "has failed to plead. . . ." We are unable to perceive anything in this language or in the language of the entire rule, G.S. 1A-1, Rule 55, which alters the established law that defaults may not be entered after answer has been filed, even though the answer be late.
Id. Our Supreme Court recognized that "the better reasoned and more equitable result may be reached by adhering to the principle that a default should not be entered, even though technical default is clear, if justice may be served otherwise." Id. After concluding that justice would be served by vacating the entry of default and permitting the parties to litigate, our Supreme Court held that
the Clerk of Superior Court of Wake County was without authority to enter the default when the answer was on file. In light of this holding, we do not deem it necessary to address the question of whether the trial judge abused his discretion in refusing to set aside the entry of default.
Id. at 356-57, 275 S.E.2d at 836. The Supreme Court remanded the matter for further proceedings. Id. at 357, 275 S.E.2d at 836. Relying upon Peebles, our Court in Mabes held that
the plaintiff lost its right to an entry of default, by failing to take action until [the] defendant's answer and counterclaim were filed. Furthermore, we find no prejudice resulting from the late filing. As such, we find justice will be better served in this case by allowing the parties to fully litigate their claims. We therefore reverse the trial court's order and remand for a trial on the matter.
Mabes, 116 N.C. App. at 353, 447 S.E.2d at 512. Likewise, in the case before us, Plaintiff waived its right to entry of default against Defendant North and South by waiting to move for entry of default until after Defendant North and South had filed its answer. Therefore, we hold the trial court lacked authority to enter default against Defendant North and South. We reverse the trial court's order and remand for trial as to Defendant North and South.
Defendant Stutts, however, did not file an answer, and the action as to him requires a different analysis. On appeal of the denial of a motion to set aside an entry of default, we examine the allegations of the complaint to determine whether they are sufficient to state a claim for relief. See Miller v. Belk, 18 N.C. App. 70, 196 S.E.2d 44, cert. denied, 283 N.C. 665, 197 S.E.2d 874 (1973). In Miller, the defendant argued that "the complaint [did] not state a claim upon which relief can be granted and that this [was] necessary to support a default judgment." Id. at 72, 196 S.E.2d at 46. After reciting the law related to the sufficiency of a complaint, our Court reviewed the allegations of the plaintiff's complaint. Id. at 72-74, 196 S.E.2d at 46-47. Our Court held as follows:
We think [the] plaintiff alleged sufficient facts to show a contract between [the] defendant and her for the sale and purchase of the business, [the] defendant's failure to perform the contract, and [the] plaintiff's damages resulting from [the] defendant's default. We hold that the complaint is sufficient to state a claim for relief against [the] defendant . . ., and the court did not err in denying his motion to vacate the entry of default.
Id. at 74, 196 S.E.2d at 47.
Similarly, in Hunter v. Spaulding, 97 N.C. App. 372, 388 S.E.2d 630 (1990), the defendant argued that "defaulting him on the [plaintiffs'] fraud claim was improper in that the [plaintiffs'] complaint for fraud was deficient." Id. at 377, 388 S.E.2d at 634. Our Court recognized that "[a] default judgment admits only the allegations contained within the complaint, and a defendant may still show that the complaint is insufficient to warrant [the] plaintiff's recovery." Id. After reviewing the allegations of the plaintiffs' complaint, our Court held that "the complaint avers the necessary elements of fraud with sufficient particularity to have allowed default judgment to be entered for the [plaintiffs.]" Id. at 378-79, 388 S.E.2d at 634-35.
In the case before us, we thus examine whether Plaintiff sufficiently alleged a claim against Defendant Stutts in his individual capacity. "It is well recognized that courts will disregard the corporate form or `pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity." Glenn v. Wagner, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). In North Carolina, courts apply the "instrumentality rule" to pierce the corporate veil. Id. Our Supreme Court has stated the instrumentality rule as follows:
[If] the corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation.
Henderson v. Finance Co., 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). In order to prevail under the instrumentality rule, a party must prove three elements:
"(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [the] plaintiff's legal rights; and
(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of."
Glenn, 313 N.C. at 454-55, 329 S.E.2d at 330 (quotingAcceptance Corp. v. Spencer, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966)). Our Courts have looked to the following factors when considering whether to pierce the corporate veil under the instrumentality rule: "1. Inadequate capitalization ('thin corporation'). 2. Non-compliance with corporate formalities. 3. Complete domination and control of the corporation so that it has no independent identity. 4. Excessive fragmentation of a single enterprise into separate corporations." Id. at 455, 329 S.E.2d at 330-31 (internal citations omitted). In the case before us, Plaintiff's complaint does not contain any allegations relating either to the elements of piercing the corporate veil or to the factors courts consider when deciding whether to pierce the corporate veil. Cf. State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, ___ N.C. App. ___, ___, 646 S.E.2d 790, 797, disc. review as to additional issues denied, 361 N.C. 701, 653 S.E.2d 162 (2007) (holding that the plaintiff stated a claim for piercing the corporate veil by alleging that the individual defendant "(1) `overwhelmingly dominated and controlled [the corporate defendant] to the extent [that the corporate defendant] had no separate identity[;]' (2) used that control to `set[] the pricing structure' so as to violate N.C. Gen. Stat. § 66-291(b); and (3) that [the individual defendant's] aforesaid control and statutory violation proximately caused unjust capital loss to the escrow fund established by N.C. Gen. Stat. § 66-291(b)"); Becker v. Graber Builders, Inc., 149 N.C. App. 787, 791, 561 S.E.2d 905, 908-09 (2002) (holding that the plaintiff stated a claim for piercing the corporate veil by alleging that the individual defendant "(1) exercised `complete domination and control' over Graber Builders, Inc.; (2) that such control was used to violate the North Carolina Building Code and commit fraud against [the] defendant; and (3) that the aforesaid control and the violation of the Code proximately caused damages to [the] plaintiff in that she was required to install a new septic system"). Moreover, in the case before us, Plaintiff's counsel admitted at the hearing on Defendants' motion to set aside entry of default that "the contract was just between [Defendant] North and South and [Plaintiff.]"
Plaintiff's complaint thus failed to state a claim against Defendant Stutts in his individual capacity and we therefore hold that the trial court abused its discretion by failing to set aside the entry of default as to Defendant Stutts. We reverse the entry of default and the default judgment as to Defendant Stutts and remand with instructions to the trial court to dismiss the action against Defendant Stutts.
Reversed and remanded.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).
NOTES
[1] At the hearing on Defendants' motion to set aside entry of default, Plaintiff's counsel stated that naming Donald W. Stutts as a defendant "was a misnomer of the original suit." The trial court then asked Plaintiff's counsel if Plaintiff was taking a dismissal as to Donald W. Stutts, and Plaintiff's counsel responded in the affirmative.