An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1132

Filed: 19 May 2015

Durham County, No. 13 CVD 5392

TERRA E. WOLFE, Plaintiff,

v.

THE ARCHIMEDES ACADEMY, a partnership, and TAMMY KEARNS, ROBNET KEARNS[1], and GARY HULL, Individually and as Partners Associated and in Business Under the Common Name The Archimedes Academy, Defendants.

Appeal by plaintiff from order entered 2 May 2014 by Judge James T. Hill in Durham County District Court. Heard in the Court of Appeals 5 March 2015.

> *Hutchison PLLC, by Trevor P. Schmidt, and Wood Jackson PLLC, by J. Christopher Jackson, for plaintiff-appellant.*

> *Nelson Mullins Riley & Scarborough LLP, by Donna Rascoe and Bryce R. Lowder, for defendants-appellees.*

DAVIS, Judge.

Terra E. Wolfe ("Plaintiff") appeals from the trial court's order dismissing her complaint against the Archimedes Academy ("Archimedes"), Tammy Kerns ("Tammy"), Robnet Kerns ("Robnet"), and Gary Hull ("Hull") (collectively

---

[1] We note that while the trial court's order spells Robnet and Tammy Kerns's last name as "Kearns," elsewhere in the record their last name is spelled "Kerns." We therefore elect to use the spelling "Kerns" throughout this opinion as this appears to be the spelling actually used by the parties.

"Defendants") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On appeal, Plaintiff contends that the trial court erred in granting Defendants' motion to dismiss based on the doctrine of *res judicata.* After careful review, we affirm.

## Factual Background

We have summarized the pertinent facts below using Plaintiff's own allegations from her complaint, which we treat as true in reviewing a trial court's order granting a motion to dismiss under Rule 12(b)(6). *See, e.g., Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006) ("When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true.").

Archimedes was a private school formed in early 2012 by Tammy, Robnet, and Hull. Archimedes was established as a general partnership under North Carolina law, and the members of the partnership were Tammy, Robnet, and Hull.[2] The inaugural class of Archimedes was to be comprised of the Kernses' daughter and Hull's daughter. Defendants planned to enroll additional students at Archimedes in the future.

---

[2] While Defendants deny that Archimedes was, in fact, a general partnership, they acknowledge in their brief that for purposes of our review of an order entered pursuant to Rule 12(b)(6), we must take Plaintiff's allegations in her complaint as true.

On 28 April 2012, Hull and Plaintiff met and discussed Hull's vision for Archimedes. This meeting led to Plaintiff submitting her resume to Archimedes for a teaching position.

On 17 May 2012, the Kernses and Hull encouraged Plaintiff to move to North Carolina from Florida by making multiple representations to her about becoming the first teacher at Archimedes, teaching their daughters, and "working with the partnership to create a curriculum that would form the basis of future years of instruction at the school."

On 24 May 2012, Tammy drafted and sent to Plaintiff a written employment agreement ("the Employment Agreement") offering Plaintiff a teaching position at Archimedes from 15 August 2012 through 15 June 2013 for which she would be compensated in the amount of $2,500.00 per month. Tammy signed the Employment Agreement as the President of Archimedes. Plaintiff signed the Employment Agreement the following day. Plaintiff subsequently moved to North Carolina in July of 2012 and began working for Archimedes on 15 August 2012.

Beginning in October 2012, however, a dispute arose between the Kernses and Hull. While the nature of the dispute is not clear from the record, it appears that as a result of the dispute, Archimedes began to pay Plaintiff only $1,250.00 — rather than $2,500.00 — per month.

On 15 November 2012, Hull sent Plaintiff a letter (the "November Agreement"), which stated, in pertinent part, as follows:

> I, Gary Hull, agree to pay you the amount of $5,000 (five thousand dollars) if you continue teaching at Archimedes Academy through the end of the 2012-2013 school year. This includes teaching through the end of the spring term (May 31, 2013), and executing end-of-the-year responsibilities such as issuing the year-end grade reports. The amount will be paid upon your successful submission of those grade reports.
>
> I am compelled to pay you this money because, on September 19, 2012, Robnet and Tammy Kerns unilaterally (and without legal cause) breached their contract with you and with Archimedes Academy. (That contract is dated May 24, 2012.) For teaching their daughter, they were contractually obligated to pay you $12,500 in 10 equal installments from August 15, 2012 through June 15, 2013. The total amount of their breach is $11,050.00.
>
> The amount of $5,000 will be reduced commensurate with the amount of any monetary damages recovered from the Kerns. So, for example, if the Kerns pay damages of $1,000, then the amount paid at the end of the school year will be $4,000.

Plaintiff signed the November Agreement, assenting to its terms. However, Plaintiff never received any compensation pursuant to this agreement.

On 24 January 2013, Plaintiff filed an action ("the Small Claims Action") in Durham County Small Claims Court against Tammy and Robnet.[3] In her complaint,

---

[3] Neither Hull nor Archimedes were named as defendants.

Plaintiff alleged claims for (1) breach of contract; (2) fraud; and (3) "tortious interference." Based on these claims, she sought damages in the amount of $5,000.00. Plaintiff later submitted to the small claims court a copy of the Employment Agreement and a narrative setting out the allegations underlying her claims for relief.

On 28 February 2013, the magistrate ruled in favor of Tammy and Robnet and dismissed Plaintiff's action with prejudice. Plaintiff appealed the dismissal to Durham County District Court, and the case was assigned to arbitration pursuant to N.C. Gen. Stat. § 7A-37.1.

On 24 April 2013, an arbitration award and judgment was entered against Plaintiff awarding her nothing and taxing her with the costs of the action. On 31 May 2013, Judge James T. Hill adopted the arbitration award as the judgment of the district court.

Plaintiff did not appeal from Judge Hill's 31 May 2013 judgment. Instead, she filed a new action in Durham County District Court on 27 November 2013, the action that forms the basis for the present appeal. In her complaint, Plaintiff asserted causes of action against Archimedes, Tammy, Robnet, and Hull, alleging that Tammy, Robnet, and Hull were being sued both individually and in their capacities as partners of Archimedes. The complaint contained claims for (1) breach of the Employment Agreement; (2) violation of the North Carolina Wage and Hour Act; (3)

breach of the November Agreement; (4) fraud and negligent misrepresentation; (5) unjust enrichment; and (6) unfair trade practices.

On 22 January 2014, Plaintiff filed a motion for entry of default as to Archimedes and Hull based on their failure to respond to her complaint. On that same date, default was entered by an assistant clerk of court against Hull and Archimedes. On 5 February 2014, Tammy and Robnet filed an answer to Plaintiff's complaint and a motion to dismiss pursuant to Rule 12(b)(6).

The motion to dismiss was heard before Judge Hill on 28 April 2014. On 2 May 2014, Judge Hill entered an order dismissing Plaintiff's complaint, which contained the following findings of fact:

> 1. Plaintiff initiated a small claims action (13 CVM 697) against Defendants Robnet Kerns and Tammy Kerns. The small claims action was continued until counsel for Defendants Robnet Kerns and Tammy Kerns were served with documents referred to and attached to the small claims complaint. The small claims action was subsequently adjudicated in favor of Defendants Robnet Kerns and Tammy Kerns by the duly appointed magistrate on February 28, 2013.
>
> 2. Plaintiff appealed her small claims action to the District Court which was heard, pursuant to the Local Rules of the 14th Judicial District, District Court Division, by a duly appointed arbitrator. The arbitrator also adjudicated the action in favor of Defendants Robnet and Tammy Kerns on April 24, 2013.
>
> 3. Plaintiff did not file a motion for a trial de novo within the designated time period and this Court therefore adopted the ruling of the arbitrator as the judgment of this

Court on May 31, 2013.

4.      Plaintiff subsequently filed a second lawsuit in Durham County District Court against Defendants in the above entitled action. Attached to Plaintiff's Complaint in the instant second lawsuit was the same alleged contract that was referred to and attached to Plaintiff's initial lawsuit that commenced in small claims court.

Judge Hill then made the following conclusions of law:

1.      The Court takes judicial notice of the pleadings and papers in the court file for Plaintiff's first lawsuit, the small claims action and subsequent appeal to District Court; said court documents are relevant to the instant action and to this Court's analysis of the res judicata doctrine.

2.      After reviewing the pleadings and papers in Plaintiff's small claims and subsequent District Court appeal action, and after consideration of the papers submitted in the instant action as referenced above, Plaintiff's Complaint alleges the same series of facts, circumstances, and parties as the previous small claims and District Court lawsuit.

3.      Plaintiff's Complaint in the instant action is barred due to the res judicata doctrine.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion to Dismiss is GRANTED and Plaintiff's Complaint is dismissed with prejudice as to all parties.

On 30 May 2014, Plaintiff filed a notice of appeal to this Court.

**Analysis**

Plaintiff's sole argument on appeal is that the trial court erred in dismissing her complaint.

> The standard of review of an order granting a Rule 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On appeal, we review the pleadings *de novo* to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.

*Gilmore v. Gilmore,* __ N.C. App. __, __, 748 S.E.2d 42, 45 (2013) (internal citations, quotation marks, and brackets omitted).

## I. *Res Judicata*

Plaintiff concedes that the doctrine of *res judicata* serves to bar her claims against Robnet and Tammy in their individual capacities based upon the prior ruling in the Small Claims Action. However, she contends that the trial court erred in ruling that *res judicata* likewise bars her claims against (1) Archimedes; (2) Hull; and (3) Tammy and Robnet, in their capacities as partners of Archimedes. We disagree.

> In order to successfully assert the doctrine of res judicata, a litigant must prove the following essential elements: (1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits.

*Moody v. Able Outdoor, Inc.,* 169 N.C. App. 80, 84, 609 S.E.2d 259, 262 (2005).

Furthermore, "[w]hether the doctrine of *res judicata* operates to bar a cause of action is a question of law reviewed *de novo* on appeal." *Mount Ulla Historical Pres. Soc'y., Inc. v. Rowan Cty.,* __ N.C. App. __, __, 754 S.E.2d 237, 240 (2014) (citation,

quotation marks, and brackets omitted).  As such, the defense of *res judicata* may be raised in connection with a motion to dismiss under Rule 12(b)(6).  *See ACC Const., Inc. v. SunTrust Mortgage, Inc.*, __ N.C. App. __, __, 769 S.E.2d 200, 211 (2015) ("[A party] cannot circumvent the application of *res judicata* by seeking a different remedy and asserting a new theory for a claim that could and should have been resolved in [an earlier action].  Accordingly, we hold that the trial court did not err in granting [a] Rule 12(b)(6) motion to dismiss [on this basis].").

Plaintiff does not dispute that the first two elements of *res judicata* exist as to her claims in the present action.  Therefore, we need only address the validity of the trial court's ruling as to the third element of *res judicata* — whether an identity of the parties or their privies existed between the present action and the Small Claims Action.

This Court has held that

> [i]n general, privity involves a person so identified in interest with another that he represents the same legal right.  Although the meaning of 'privity' has proven to be elusive, and there is no definition of the word . . . which can be applied in all cases, the prevailing definition in our cases, at least in the context of *res judicata*, . . . is that privity denotes a mutual or successive relationship to the same rights of property.  In determining whether such a privity relation exists, courts will look beyond the nominal party whose name appears on the record . . . and consider the legal questions raised as they may affect the real party or parties in interest.

*Williams v. Peabody*, 217 N.C. App. 1, 8, 719 S.E.2d 88, 94 (2011) (internal citations,

quotation marks, and brackets omitted).

Because of the allegation in Plaintiff's complaint concerning the status of

Archimedes as a partnership with Hull, Tammy, and Robnet serving as its general

partners, we must examine principles of law applicable to general partnerships in

order to determine whether the third element of *res judicata* has been met.[4]  It is

well-established that

> a partnership is an association of two or more persons to
> carry on as co-owners a business for profit; that every
> partner is an agent of the partnership for the purposes of
> its business, and the act of every partner for apparently
> carrying on in the usual way the business of the
> partnership of which he is a member ordinarily binds the
> partnership; that where by any wrongful act or omission of
> any partner acting in the ordinary course of the business of
> the partnership or with the authority of his co-partners,
> loss or injury is caused to any person, not being a partner
> in the partnership, or any penalty is incurred, the
> partnership is liable therefor to the same extent as the
> partner so acting or omitting to act; and that all partners
> are liable jointly and severally for everything chargeable to
> the partnership[.]

*Dwiggins v. Parkway Bus Co.*, 230 N.C. 234, 238, 52 S.E.2d 892, 894-95 (1949)

(internal citations omitted).

---

[4] In her brief, Plaintiff cites cases involving the extent to which privity existed between shareholders and the corporate entity in the context of a closely held corporation.  *See, e.g., Troy Lumber Co. v. Hunt*, 251 N.C. 624, 112 S.E.2d 132 (1960).  However, because, as explained herein, principles of partnership law apply instead, her reliance on such cases is misplaced.

We are guided by our Supreme Court's decision in *Ron Medlin Const. v. Harris*, 364 N.C. 577, 704 S.E.2d 486 (2010), in which the Court made clear that actions taken by individual partners in furtherance of partnership business bind the partnership and further distinguished between corporations and partnerships in this context:

> Unlike a corporation that acts through its officers and directors, who may or may not be shareholders, partnerships act through their partners. Shareholders in a corporation are insulated from personal liability for acts of the corporation, but partners in a partnership are not insulated from liability. Stated differently, no corporate veil exists between a general partnership and its partners.
>
> . . . .
>
> The jurisdictions appear to be split as to whether a partnership is a separate legal entity, an aggregate of the partners, or a hybrid organization that is viewed as an aggregation of partners for some purposes and as a separate entity for others. . . . In our view, the treatment of a partnership as a hybrid organization that is considered an aggregate of the partners for some purposes and a separate entity for others more nearly reflects a correct interpretation of the Uniform Partnership Act than does the separate entity concept. *The act of a partner in furtherance of the partnership's business binds the partnership unless the partner was not authorized to act.*

*Id.* at 583-84, 704 S.E.2d at 490-91 (internal citations and quotation marks omitted and emphasis added).

This Court has held that a privity relationship exists between partners when a contract is entered into by the partnership through one of its partners acting as an agent of the partnership.

> Defendant argues, however, that there is no privity
> between the defendant-seller and plaintiff since it was the
> partnership and not the plaintiff which purchased the
> cable and clamp.  We do not agree.  It is fundamental that
> all partners are agents of each other, that a contract
> entered into by the agent is a contract entered into by the
> principal and that all partners are liable on any contract
> executed by a single partner in the name of the
> partnership.  If a partner may be sued for nonpayment or
> other breach of the contract, he certainly is privy to the
> contract.

*Barnes v. Campbell Chain Co.*, 47 N.C. App. 488, 490, 267 S.E.2d 388, 389-90 (1980)

(internal citations omitted).  These fundamental principles of partnership law — that

a privity relationship exists between a partnership and its general partners and that

partners are agents of the partnership and each other — are directly applicable to

the present case.

In addition, our prior caselaw has applied these principles in the *res judicata*

context, holding that

> the principal's liability is derivative, arising from the acts
> of the agent.  Accordingly, where the agent has no liability,
> there is nothing from which to derive the principal's
> liability under the doctrine.  Applying this reasoning, the
> appellate courts of this State have repeatedly held that a
> final adjudication on the merits that an agent bears no
> liability acts as *res judicata* to prevent an attempt to
> pursue derivative claims against the principal.

*Cameron Hospitality, Inc. v. Cline Design Associates, PA*, __ N.C. App. __, __, 735

S.E.2d 348, 351 (2012) (internal citations omitted), *disc. review denied*, 366 N.C. 564,

738 S.E.2d 370 (2013).

We believe that the real party in interest here in both the Small Claims Action and the present action is Archimedes. It is clear that the Employment Agreement — written on Archimedes letterhead — was entered into by Tammy acting in her capacity as a partner of Archimedes and in furtherance of the partnership's business by extending the offer of a teaching position to Plaintiff. It is likewise clear that, in so acting, she served as an agent of Archimedes, Hull, and Robnet. [5]

Similarly, the November Agreement was entered into by Hull in his role as a partner of Archimedes given that the document provided for Plaintiff's continued teaching at Archimedes and further obligated her to perform "end-of-the-year responsibilities such as issuing the year-end grade reports" for the partnership's benefit. For this reason, Hull bound Archimedes, Tammy, and Robnet when he executed the November Agreement in his capacity as a partner of Archimedes.[6]

---

[5] Indeed, Plaintiff's complaint appears to acknowledge that the Employment Agreement was an agreement between her and Archimedes. Her complaint alleges that "[a]mong other things, the Employment Agreement obligated *Archimedes Academy* to pay [Plaintiff] $2,500 per month for the period beginning August 15, 2012 through June 15, 2013." (Emphasis added).

[6] Despite the fact that the November Agreement contains language such as "*I, Gary Hull*, agree to pay you . . ." and "*I* am compelled to pay you this money . . ." and further references an internal dispute between the partners of Archimedes, there was nothing in the materials properly before the trial court to refute the proposition that the agreement was nevertheless executed by Hull acting as a partner in furtherance of the partnership's business. The November Agreement conveys benefits to Archimedes in the form of (1) Plaintiff's agreement to continue teaching at the school; and (2) Plaintiff's promise to execute additional tasks at the end of the school year. In addition, immediately below Hull's name on the letterhead of the November Agreement is the phrase "Founder, Archimedes Academy[.]"

Therefore, because both the Employment Agreement and the November Agreement were executed in furtherance of the partnership's business, Archimedes was the real party in interest in both actions. Consequently, the ruling in favor of the Kernses in the Small Claims Action based on the alleged breach of the Employment Agreement precluded further litigation of claims relating to Plaintiff's employment agreements in a subsequent suit against Archimedes, the Kernses, or Hull.[7]

For these reasons, we conclude that the third element of *res judicata* was satisfied here. Although Plaintiff asserts that she sued Tammy and Robnet in the Small Claims Action solely in their individual capacities, a privity relationship clearly existed between Tammy, Robnet, Archimedes, and Hull. Thus, regardless of the differences in the manner in which Plaintiff has attempted to frame her allegations and identify the adverse parties in the two actions, it is clear that both lawsuits, in

---

[7] While the November Agreement was not expressly raised in the Small Claims Action, it is well-established that *res judicata* applies not only to claims actually brought in a prior action but also to claims that *could* have been brought in that action. *See Housecalls Home Health Care, Inc. v. State*, __ N.C. App. __, __, 738 S.E.2d 753, 758 ("The doctrine [of *res judicata*] prevents the relitigation of all matters that were or should have been adjudicated in the prior action. Thus, *res judicata* not only bars the relitigation of matters determined in the prior proceeding but also all material and relevant matters within the scope of the pleadings, which the parties, in the exercise of reasonable diligence could and should have brought forward. All of a party's damages resulting from a single wrong must be recovered in a single action." (internal citations, brackets, and ellipses omitted)), *disc. review denied*, 366 N.C. 592, 743 S.E.2d 181 (2013). In addition, as noted above, Plaintiff has conceded that the "identity of claims" element of *res judicata* is satisfied as between the Small Claims Action and the present action.

essence, seek redress of the same wrong — breach of the employment agreements in effect between her and Archimedes.

The *res judicata* doctrine therefore bars Plaintiff's claims in the present action based on the final judgment in the Small Claims Action. Plaintiff's argument on this issue is therefore overruled.

## II. Entry of Default

Plaintiff's final contention is that the trial court erred in dismissing her complaint as to Hull and Archimedes because the entry of default previously entered against them had not been set aside prior to the date of the trial court's 2 May 2014 order dismissing the action in its entirety. This argument also lacks merit.

It is well-established that "[t]he effect of an entry of default is that the defendant against whom entry of default is made is deemed to have admitted the allegations in plaintiff's complaint, and is prohibited from defending on the merits of the case." *Hartwell v. Mahan*, 153 N.C. App. 788, 791, 571 S.E.2d 252, 253-54 (2002) (citation and quotation marks omitted), *disc. review denied*, 356 N.C. 671, 577 S.E.2d 118, 118-19 (2003). However, it is only "[w]hen an entry of default is made *and the allegations of the complaint are sufficient to state a claim*, [that] the defendant has no further standing to contest the merits of plaintiff's right to recover." *Id.* at 790, 571 S.E.2d at 253 (emphasis added).

Therefore, obtaining an entry of default against a defendant does not eliminate the plaintiff's obligation to state a claim upon which relief can be granted under some legal theory.

> A default judgment admits only the allegations contained within the complaint, and a defendant may still show that the complaint is insufficient to warrant plaintiff's recovery. *Lowe's of Raleigh, Inc. v. Worlds*, 4 N.C. App. 293, 295, 166 S.E.2d 517, 518 (1969); *accord, Weft, Inc. v. G.C. Investment Associates*, 630 F.Supp. 1138, 1141 (E.D.N.C. 1986), *aff'd*, 822 F.2d 56 (4th Cir. 1987) (default not treated as absolute confession by defendant of plaintiff's right to recover and court must consider whether plaintiff's allegations are sufficient to state claim for relief).

*Hunter v. Spaulding*, 97 N.C. App. 372, 377, 388 S.E.2d 630, 634 (1990).

Thus, the key question is whether Plaintiff's complaint in the present action was sufficient to warrant recovery against Archimedes and Hull. We conclude that it was not.

"On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted." *Allred v. Capital Area Soccer League, Inc.*, 194 N.C. App. 280, 282, 669 S.E.2d 777, 778 (2008) (citation omitted). The applicability of the *res judicata* doctrine is sufficient to warrant the dismissal of an action under Rule 12(b)(6). *See Cline v. McCullen*, 148 N.C. App. 147, 149, 557 S.E.2d 588, 590 (2001) (affirming trial court's dismissal of claim under Rule 12(b)(6) where privity element of *res judicata* was established).

In the present case, as discussed above, the real party in interest in both the Small Claims Action and the present action was Archimedes. Because Tammy, Robnet, and Hull were all in privity with Archimedes by nature of their status as general partners of the partnership, *res judicata* operates as a bar to Plaintiff's claims in the present action as to *all* of the named Defendants. Therefore, Plaintiff's complaint was not sufficient to state a valid claim for relief against Hull or Archimedes. For this reason, the prior entry of default against these two defendants did not preclude the trial court from dismissing the claims asserted by Plaintiff against them.

## Conclusion

For the reasons stated above, the order of the trial court is affirmed.

AFFIRMED.

Judges STROUD and DILLON concur.

Report per Rule 30(e).